# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:10-cr-00155-GZS |
| WAYNE CARTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ON RENEWED MOTION TO DISMISS**

On August 26, 2011, Defendant Wayne Carter conditionally pleaded guilty to a one-count indictment of possession of a firearm following a prior conviction of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) & 924(a). Carter appealed his conviction to the U.S. Court of Appeals for the First Circuit, arguing that an offense with a mens rea of recklessness cannot serve as a predicate misdemeanor crime of domestic violence under § 922(g)(9). The First Circuit vacated Carter's conviction and remanded the case for further consideration in light of the Supreme Court's recent opinion in United States v. Castleman, 134 S. Ct. 1405 (2014). Accordingly, before the Court is Defendant Wayne Carter's Renewed Motion to Dismiss the Indictment (ECF No. 91) ("Motion to Dismiss"). For the reasons explained below, the Court GRANTS the Motion to Dismiss.

## I.      BACKGROUND

On April 1, 1997, Carter was charged with a violation of Maine's general purpose assault statute, 17-A M.R.S.A. § 207. The Information read: "That on or about the 24th day of February, 1997, the City/Town of Warren, County of Knox, State of Maine, Wayne Carter did intentionally,

knowingly or recklessly cause bodily injury or offensive physical contact to Angie Eagan."[1] (Information For Violation Of 17-A M.R.S.A. § 207 ASSAULT – Class D (ECF No. 19-1; 31-1).) On that same date, Carter pleaded guilty. The state court docket reveals that the Court "ADJUDGED that the Defendant is guilty of Assault, Class D (17-A §207) as charged and convicted. Sentenced to Knox County Jail for 30 days." (Docket Sheet (ECF No. 31-1) at Page ID # 54.)

Three years later, on March 20, 2010, Carter pawned a Riger, Mini-14 Ranch Rifle, .223 caliber rifle at the Waldoboro Trading Company in Waldoboro, Maine. (Prosecution Version (ECF No. 38) at 1.) On April 16, 2010, Carter attempted to redeem the pawned firearm but was ultimately unsuccessful. (Id.) On April 30, 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives Agents interviewed Carter at his home regarding his attempted retrieval of the rifle. During the interview, Carter recalled his prior conviction. (Id.)

On September 22, 2010, Carter was charged in a one-count indictment with the knowing possession of a firearm after a previous conviction of a misdemeanor crime of domestic violence in violation of 18 U.S.C. §§ 922(g)(9) and 924(a). (Indictment (ECF No. 1).) On November 12, 2010, Carter moved to dismiss the indictment on the grounds that a conviction under Maine's general purpose assault statute, 17-A M.R.S.A. § 207, should not qualify as a predicate offense for § 922(g)(9). (Mot. To Dismiss Indictment (ECF No. 19).) Specifically, Carter argued:

> [A] conviction under the Maine assault statute, which allows for a conviction upon proof of 'recklessness' as an intent element, is not adequate as a prior conviction for violation of § 922(g)(9) because an adequate predicate 'misdemeanor crime of domestic violence' must involve an offense that requires a higher level of criminal intent than 'recklessness' to qualify as a crime of violence.

---

[1] Angie Eagan was his live-in girlfriend and the mother of his child.

2

(Id. at 4.)[2] The Court denied that Motion, stating that United States v. Booker, 644 F.3d 12 (1st Cir. 2011), "serves as binding and controlling precedent for the issues presented in Defendant's Motion." (ECF No. 35.)

On August 26, 2011, Carter conditionally pled guilty and reserved his right to appeal the Court's Order on his motion to dismiss. He was sentenced to a prison term of twelve months and one day, and the execution of his sentence was stayed pending resolution of his appeal. Shortly thereafter, Carter appealed his conviction, arguing that commission of a simple assault by recklessly causing offensive physical contact cannot constitute a predicate offense for purposes of 18 U.S.C. § 922(g)(9).[3] On April 30, 2014, the U.S. Court of Appeals for the First Circuit vacated his conviction and remanded the motion to dismiss to this Court, stating:

> [T]here may be some merit to [Carter's] statutory argument in light of the Supreme Court's recent decision in United States v. Castleman, —— U.S. ——, 134 S. Ct. 1405 (2014). Finding that the record is insufficiently developed on this issue, we vacate Carter's conviction and the district court's denial of his original motion to dismiss the indictment, and we remand the case for further proceedings consistent with this opinion.

United States v. Carter, 752 F.3d 8, 10 (1st Cir. 2014).

On remand from the First Circuit, Carter asserts that his previous conviction for simple assault was not a misdemeanor crime of domestic violence as that term is defined in 18 U.S.C.

---

[2] Carter also argued that "the offensive touching that may support a conviction of simple assault under the Maine statute is not adequate to make out the violent force that must be shown to support the 'physical force' required in the definition of a 'misdemeanor crime of domestic violence.' 18 U.S.C. § 16 and § 922(a)(33)(A)(ii)." (Mot. To Dismiss Indictment (ECF No. 19) at 4.) The Supreme Court rejected this argument in United States v. Castleman, with its holding that "the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction." 134 S. Ct. 1405, 1413 (2014).

[3] Carter also asserted that under the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570 (2008), "the government failed to demonstrate a 'reasonably close fit' between the purpose of the restriction (reducing the frequency of deaths resulting from domestic violence) and the restriction itself (in his words, 'permanently dispossessing non-violent domestic misdemeanants of their Second Amendment rights')." United States v. Carter, 752 F.3d 8, 10 (1st Cir. 2014). Finally, Carter argued that he was entitled to a lesser sentence under the relevant sentencing guideline because he possessed the firearm solely for lawful sporting purposes. Id. The First Circuit dismissed Carter's Constitutional argument and did not reach his sentencing claim. See id. at 13, 21.

3

§ 921(a)(3) in light of United States v. Castleman, 134 S. Ct. 1405 (2014). Carter therefore asserts that his Indictment must be dismissed.

## II. DISCUSSION

Carter was charged with violating 18 U.S.C. § 922(g)(9), commonly known as the Lautenberg Amendment to the Gun Control Act of 1968. The Lautenberg Amendment makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any firearm or ammunition[.]" Id. A misdemeanor crime of domestic violence is defined as

> an offense that (1) is a misdemeanor under Federal, State, or Tribal law; and (2) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33).

In this case, Carter's prior conviction was under Maine's general purpose assault statute, 17-A M.R.S.A. § 207, which provides that: "A person is guilty of assault if [] [t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." On appeal to the First Circuit, Carter argued that the "use of force" required for a misdemeanor crime of domestic violence under § 922(g)(9) requires more than reckless conduct permitted for a conviction under Maine's 17-A M.R.S.A. § 207.

Prior to the Supreme Court's opinion in United States v. Castleman and the First Circuit's opinion in this case, the First Circuit had at least twice explicitly rejected Carter's argument. First, in United States v. Booker, two defendants argued that only an intentional offense could qualify as a misdemeanor crime of domestic violence under § 922(g)(9), and, accordingly, that a

4

conviction under Maine's assault statute, which may be violated intentionally, knowingly, or recklessly, cannot serve as a predicate conviction. 644 F.3d at 13. The First Circuit held that "the statutory definition of 'misdemeanor crime of domestic violence' does not prescribe an intentional mens rea. We therefore hold that an offense with a mens rea of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)." Id. at 21.

Subsequent to United States v. Booker, in United States v. Armstrong, the First Circuit reiterated its holding in United States v. Booker that "an offense with a mens rea of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)" and also held that a conviction for a non-violent, offensive touching could constitute a predicate offense for § 922(g)(9). United States v. Armstrong, 706 F.3d 1, 4 (1st Cir. 2013) cert. granted, judgment vacated, 134 S. Ct. 1759 (2014); see also United States v. Nason, 269 F.3d 10, 22 (2001)(holding that "all convictions under Maine's general-purpose assault statute, [17-A M.R.S.A. § 207(1)], necessarily involve, as a formal element, the use of physical force.").

On March 26, 2014, after Carter's case before the First Circuit was fully briefed, the Supreme Court issued its opinion in United States v. Castleman, 134 S. Ct. 1405 (2014). In 2001, the respondent, James Alvin Castleman, pleaded guilty in a Tennessee court to having "intentionally or knowingly cause[d] bodily injury to" the mother of his child. Id. at 1408. In 2008, Castleman was indicted by a federal grand jury with two counts of violating § 922(g)(9). Castleman moved to dismiss the indictment arguing that the underlying conviction was not a misdemeanor crime of domestic violence because "it did not have, as an element, the use of physical force." Id. at 1409 (internal quotations and punctuation omitted). The District Court granted the motion to dismiss reasoning that "the 'use of physical force' for § 922(g)(9) purposes must entail violent contact with the victim." Id. (internal quotations and punctuation omitted). A

5

divided panel of the Sixth Circuit affirmed on different grounds. "The majority held that the degree of physical force required by § 921(a)(33)(A)(ii) is the same as required by § 924(e)(2)(B)(i), which defines 'violent felony.'" Id. The Supreme Court granted certiorari to resolve a split among the U.S. Courts of Appeals as to the degree of physical force required for an act to constitute a misdemeanor crime of domestic violence.

In United States v. Castleman, the Supreme Court held that "Congress incorporated the common-law meaning of 'force' – namely, offensive touching – in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'" 134 S. Ct. at 1410. The Court reasoned that unlike in Johnson v. United States, 559 U.S. 133 (2010), where the Court considered whether a battery was a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), in the domestic violence context, the common law meaning of "force" fit perfectly. 134 S. Ct. at 1410-12. Accordingly, under § 922(g), the requirement of physical force is satisfied by the degree of force that supports a common law battery – the slightest offensive touching. Id. at 1410.

The Supreme Court then turned its analysis to whether Castleman's conviction qualified as a misdemeanor crime of domestic violence. First, the Court utilized the "categorical approach" to determine whether Castleman's conviction necessarily involved "the use or attempted use of physical force, or the threatened use of a deadly weapon." § 922(a)(33)(A). The Tennessee statute under which Castleman was convicted defined three types of assault: "(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) [i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly caus[ing] physical contact with another" in a manner that a "reasonable person would regard . . . as extremely offensive or provocative." Id. at 1413 (quoting Tenn. Code Ann. § 39-13-101(a).) Significantly, at this point in its analysis, the Supreme Court stated that not every assault under the

Tennessee statute necessarily involved "the use or attempted use of physical force, or threatened use of a deadly weapon." Id. at 1413-14. Specifically, "the merely reckless causation of bodily injury under § 39 – 13 – 101(1) may not be a 'use' of force." Id. at 1414. In a footnote, the Supreme Court raised the central issue of Carter's argument. The Court stated:

> We held in [Leocal v. Ashcroft, 543 U.S. 1 (2004)] that "'use' requires active employment," rather "than negligent or merely accidental conduct." 543 U.S. at 9. Although Leocal reserved the question whether a reckless application of force could constitute a "use" of force, id. at 13, the Courts of Appeals have almost uniformly held that recklessness is not sufficient. See United States v. Palomino Garcia, 606 F.3d 1317, 1335–1336 (11th Cir. 2010); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 560 (7th Cir. 2008); United States v. Zuniga–Soto, 527 F.3d 1110, 1124 (10th Cir. 2008); United States v. Torres-Villalobos, 487 F.3d 607, 615-16 (8th Cir. 2007); United States v. Portela, 469 F.3d 496, 499 (6th Cir. 2006); Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1127-32 (9th Cir. 2006) (en banc); Garcia v. Gonzales, 455 F.3d 465, 468-69 (4th Cir. 2006); Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3rd Cir. 2005) (Alito, J.); Jobson v. Ashcroft, 326 F.3d 367, 373 (2nd Cir. 2003); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th Cir. 2001). But see United States v. Booker, 644 F.3d 12, 19-20 (1st Cir. 2011) (noting that the First Circuit had not resolved the recklessness issue under Leocal, but declining to extend Leocal's analysis to § 922(g)(9)).

Castleman, 134 S. Ct. at 1414 n.8. After noting that reckless conduct may not be a "use" of force, the Supreme Court declined to determine whether the Tennessee statute could categorically qualify as a misdemeanor crime of domestic violence because both sides agreed that the statute was divisible, which allowed the Court to apply the modified categorical approach. Id. at 1414.

Turning to Castleman's indictment, the Court determined that Castleman pled guilty to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child and that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." Id. The Supreme Court held that Castleman's conviction therefore qualified as a misdemeanor crime of domestic violence. Id. at 1416.

After the Supreme Court issued its opinion in United States v. Castleman, the Supreme Court vacated the judgment in United States v. Armstrong and remanded the case to the First

7

Circuit for further consideration in light of United States v. Castleman. Armstrong v. United States, 134 S. Ct. 1759 (2014). As another judge in this Court has previously stated:

> Reading Supreme Court tea leaves is chancy, but the First Circuit decision in Armstrong[] was consistent with Castleman except for the Circuit Court's brief recklessness analysis. It is a short logical step to conclude that the reason the Supreme Court vacated the First Circuit decision in Armstrong[]was to pull the First Circuit in line with the other ten circuit courts in the recklessness analysis.

United States v. Hines, 1:12-CR-00204-JAW, 2014 WL 1875164 at *8 (D. Me. May 9, 2014).

Shortly after the Supreme Court issued its opinion in United States v. Castleman and vacated Armstrong, the First Circuit issued its opinion in this case. After reviewing the factual and procedural background, the First Circuit turned its attention to assessing the impact of United States v. Castleman and Armstrong on Carter's argument. The First Circuit acknowledged that United States v. Castleman "casts doubt" on the First Circuit's United States v. Booker holding that "a prior 'offense with a mens rea of recklessness' may support a conviction under § 922(g)(9)." Carter, 752 F.3d at 18 (citing Booker, 644 F.3d at 21). Accordingly, "the validity of Carter's § 922(g)(9) conviction may depend on which mens-rea prong of the Maine general-purpose assault statute served as the basis for his guilty plea and conviction." Id.

In a footnote, the First Circuit acknowledged that United States v. Castleman does not directly overrule United States v. Booker. Carter, 752 F.3d at 18 n.11. The Government, in opposing Carter's Motion to Dismiss, strongly argues that United States v. Booker remains good law and that this Court is bound to adhere to United States v. Booker and its progeny until they are expressly overruled. (Government's Objection To Def.'s Renewed Mot. To Dismiss The Indictment (ECF No. 94) ("Gov't Objection") at 2-3.) In Carter, the First Circuit acknowledged that stare decisis would normally bind the court to its earlier rulings, but then stated two exceptions to the rule.

> First, we may depart from an existing panel decision when subsequent controlling authority – such as a Supreme Court opinion, First Circuit en banc opinion, or a new statute – undermines our earlier opinion. Second, there is a limited exception that permits one panel to overrule another in those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.

Carter, 752 F.3d at 18 n.11 (internal citations and quotations omitted). The First Circuit then stated:

> The Supreme Court's statements in Castleman – that "the merely reckless causation of bodily injury . . . may not be a 'use' of force," Castleman, 134 S. Ct. at 1414, and that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to "constitute a 'use' of force," id. at 1414 n. 8 – provide a "'sound reason'" for thinking that the Booker panel might well "'change its collective mind'" in light of Castleman.

Id. Further, while the statement in Castleman was via dictum in a footnote, "it is much more than an offhand comment. [The First Circuit] ha[s] recognized before, and today reaffirm[s], that '[c]arefully considered statements of the Supreme Court, even if technically dictum, must be accorded great weight and should be treated as authoritative.'" Crowe v. Bolduc, 365 F.3d 86, 92 (1st Cir. 2004) (quoting United States v. Santana, 6 F.3d 1, 9 (1st Cir. 1993)). This Court cannot ignore the guidance of the Supreme Court and the First Circuit in Castleman, Armstrong and Carter. Therefore, in accordance with the Court's reading these recent rulings, the Court now concludes that Carter's conviction may only stand if it was premised on more than accidental, negligent or reckless conduct.

To determine which mens rea prong served as the basis of Carter's guilty plea, the Court utilizes the modified categorical approach. See Carter, 752 F.3d at 17-18. Under this approach, the Court must first identify the offense to which Carter pled guilty. See id. To do this the Court may consider approved documents under Shepard v. United States, 544 U.S. 13 (2005), which consist of "the trial record – including charging documents, plea agreements, transcripts of plea

9

colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Id. at 19 (internal citations and quotations omitted). Because Carter entered a guilty plea, the approved "Shepard" documents will consist of "mainly of the charging document, written plea agreement, and transcript of the change-of-plea colloquy." Id. (internal citation omitted). The Court may not make an independent inquiry into the facts underlying the state court plea and is therefore not permitted to consider the underlying police report. Id. at 19-20. The record before the First Circuit was limited to the "the Information dated April 1, 1997; a docket sheet pertaining to the case, which includes certain minutes of the proceedings before the Maine state court and the court's judgment; and the Knox County Sheriff's Department incident report, including the arresting officer's narrative and the victim's statement." Id. at 20. As before the First Circuit, the incident report, the arresting officer's narrative and the victim's statement are not permissible documents for the Court to consider. The First Circuit remanded this case to allow the Government and the Defense to further develop, if possible, the record on this issue. Id. at 21.

The only additional material proffered before this Court consists of the transcript of Defendant's plea colloquy in the Knox County Superior Court on April 1, 1997. (See Exhibit 1 to Government's Objection (ECF No. 94-1) at Page ID # 289.) Within that transcript is a single statement by Carter's attorney at the plea colloquy that provides background into the underlying offense. Carter's attorney stated: "[T]he discovery shows that this was no more than a push on the right shoulder, that it was nothing more serious than that[.]" (Id.) This statement is insufficient to determine which mens rea served as the basis of Carter's guilty plea. Reviewing all of the proper Shepard documents currently before the Court, the Court is unable to identify the offense of Carter's conviction. Where the Court is unable to "identify the offense of conviction . . . the conviction may only serve as a predicate offense if each of the possible offenses of conviction

10

would qualify as" a misdemeanor crime of domestic violence under § 922(g)(9).  See United States v. Holloway, 630 F.3d 252, 257 (1st Cir. 2011).  Here, the Court is unable to identify the underlying offense, and, therefore it is possible that Carter pled to an offense with a mens rea of recklessness.  Under Castleman, Armstrong, and Carter, such an offense cannot serve as a predicate misdemeanor crime of domestic violence under § 922(g)(9).[4]

In short, on the record presented, Carter's 1997 assault conviction cannot serve as a predicate misdemeanor crime of domestic violence under § 922(g)(9).  Therefore, Carter's Motion to Dismiss The Indictment (ECF No. 91) is GRANTED.

SO ORDERED.

    /s/ George Z. Singal
    United States District Judge

Dated this 8th day of July, 2014.

---

[4] Notably, on remand the Government does not seriously argue that the offense to which Carter pled guilty is identifiable. (Gov' Objection at 2 n.2.)  Instead, the Government urges this Court to find that Booker remains good law and that an offense with a mens rea of recklessness can serve as a predicate offense.  The Court finds that Castleman, Armstrong, and Carter are determinative, controlling law that reject the Government's argument.